No. 13-35596

---

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

---

JOEL JOHNSON, a single person,

Plaintiff-Appellant,

v.

FEDERAL HOME LOAN MORTGAGE CORPORATION,

Defendant-Appellee.

---

# REPLY BRIEF OF APPELLANT JOHNSON

---

Joel B. Hanson
WSBA #40814
Joel B. Hanson, Attorney at Law, PLLC
2825 Eastlake Avenue E. Suite 115
Seattle, WA 98102
(206) 412-8765

Attorney for Plaintiff-Appellant


## TABLE OF CONTENTS

A. Freddie Mac Was the Lender ........ 1

B. There is Nothing "Contradictory" About Johnson's Contention that Freddie Mac Became the Lender after It Was Assigned the Mortgage ........ 4

C. Freddie Mac Misstates the Law Concerning Assignment of ........ 5
Contractual Rights ........ 5

D. Freddie Mac's Brief Contradicts the Facts Contained in the Complaint . 8

E. The Merrill Doctrine Does Not Protect Freddie Mac from a Failure to Perform Its Own Obligations ........ 11

F. Freddie Mac had a Fiduciary Duty to Johnson ........ 12

## TABLE OF AUTHORITIES

**Cases**

*Am. Flint Glass Workers Union v. Anchor Resolution Corp.*, 197 F.3d 76, 81 (3d Cir. 1999) ........ 5

*Bain v. Metro. Mortg. Grp., Inc.*, 175 Wn.2d 83, 92-93, 285 P.3d 34 (2012) 3

*Conley v. Gibson*, 355 U.S. 41, 47 (1957) ........ 9

*Hardinger v. Fullerton,* 165 Wash. 483, 490, 5 P.2d 987 (1931) ........ 8

*Lachmar v. Trunkline LNG Co.*, 753 F.2d 8, 9-10 (2nd Cir. 1985) ........ 6

*Lewis v. Boehm*, 89 Wn.App. 103, 107, 947 P.2d 1265 (1997) ........ 7

*Pacord, Inc. v. U.S.*, 139 F.3d 1320, 1323 (9th Cir. 1998) ........ 11

*Paullus v. Fowler*, 59 Wn.2d 204, 212, 367 P.2d 130 (1961) ........ 1

*Richard T. Blake & Associates, Inc. v. Aetna Cas. & Sur. Co.*, 255 A.D.2d 569, 570-71, 681 N.Y.S.2d 73, 75 (1998) ........ 6

*Rittenberg v. Donohoe Construction Co.*, 426 A.2d 338, 341 (D.C. 1981) ... 7

*Schneider v. Dumbarton Developers, Inc.*, 767 F.2d1007, 1018 (D.C. Cir.1985) ... 7

*U.S. v.Thompson and Georgeson, Inc.*, 346 F.2d 865, 869 (9th Cir. 1965) ... 5

*Variblend Dual Dispensing Sys., LLC v. Seidel GmbH & Co., KG*, No. 13 CIV. 2597 PAE, 2013 WL 4528902 (S.D.N.Y. Aug. 27, 2013) ... 2

*Wyler Summit P'ship v. Turner Broad. Sys.*, 135 F.3d 658, 661 (9th Cir. 1998) ... 8

**Statutes and Regulations**

12 USC § 2605 ... 1

### A. Freddie Mac Was the Lender

Appellee Federal Home Loan Mortgage Corporation's ("Freddie Mac") central argument is that it was not the lender (or "Lender") under the terms of the deed of trust mortgage contract (the "Deed of Trust"). (Answering Brief at 10.) This is important because the Lender was obligated to use Johnson's escrow funds to pay his insurance premium to Safeco.[1] The central question in this appeal is whether Freddie Mac had such a duty.

Freddie Mac was the Lender because it purchased the Lender's security interest embodied within the Deed of Trust mortgage contract. This purchase of the mortgage constituted an assignment of all the Lender's rights and obligations under that mortgage contract. *Paullus v. Fowler*, 59 Wn.2d 204, 212, 367 P.2d 130 (1961) (the assignee of a contract stands in the shoes of the assignor). Freddie Mac argues that it was not the lender because "Freddie Mac relies exclusively on the loan servicers to control all aspects of the mortgage servicing operations." (Answering Brief at 10.) But Freddie Mac's decision to delegate its duties to loan servicers has no effect on the legal question of whether Freddie Mac was assigned the lender's rights and

[1] The Deed of Trust provided that the "Lender shall apply the Funds to pay the Escrow Items no later than the time specified by RESPA." (ER 7 at 26.) The Escrow Items included the insurance premium for homeowner's insurance. (ER 7 at page 26, part 3(c).) The RESPA provided that escrow payments should be made "in a timely manner as such payments become due." 12 USC § 2605 (g).

obligations when it purchased the mortgage. Freddie Mac further argues that Taylor, Bean, & Whitaker Mortgage Corporation ("Taylor Bean") was not its agent and was an "independent contractor." (Answering Brief at 11.) But the question of whether Taylor Bean was an agent or an independent contractor has no effect on the legal question of whether Freddie Mac was assigned the lender's rights and obligations.

The question of whether Freddie Mac was bound by the obligations of the Deed of Trust is a question of contract law discussed in Johnson's Opening Brief. As one court put it, "it is elementary ancient law that an assignee never stands in any better position than his assignor." *Variblend Dual Dispensing Sys., LLC v. Seidel GmbH & Co., KG*, No. 13 CIV. 2597 PAE, 2013 WL 4528902 (S.D.N.Y. Aug. 27, 2013). Freddie Mac is arguing that, contrary to this ancient law, it was assigned the mortgage but that it stood in a better position than the original lender.

It is undisputed that Taylor Bean was the original Lender. When Taylor Bean assigned Freddie Mac the Lender's security interest embodied within the Deed of Trust, Freddie Mac stood in the shoes of the Lender and took all its rights and obligations. These Lender rights included both the right to repayment of the debt and the right to foreclose on the property. Indeed, Freddie Mac exercised those rights and threatened foreclosure on

Johnson's home. (Dkt. No. 27 at page 6, ¶ 5.50.) After exercising the Lender's rights, Freddie Mac is now arguing that it was not assigned any of the Lender's obligations. But it would be unfair and contrary to Washington contract law for Freddie Mac to stand in a better position than its assignor.

In addition to general contract law, Freddie Mac was the lender/beneficiary/mortgagee under Washington deed of trust law. Freddie Mac acknowledges that a deed of trust mortgage is "a three-party transaction in which land is conveyed by a borrower, the 'grantor,' to a 'trustee,' who holds title in trust for a lender, the 'beneficiary,' as security for credit or a loan the lender has given the borrower." (Answering Brief at 7, citing *Bain v. Metro. Mortg. Grp., Inc.*, 175 Wn.2d 83, 92-93, 285 P.3d 34 (2012)). This confirms that the "lender" is the same as the "beneficiary" under Washington law.

In Johnson's deed of trust, Taylor Bean was the original lender/beneficiary/mortgagee. When Taylor Bean sold the mortgage to Freddie Mac, Freddie Mac became the lender/beneficiary/mortgagee and Taylor Bean became the loan servicer. The loan servicer is not a party to a deed of trust transaction and has no rights or obligations under the deed of trust contract. In *Bain*, the Washington Supreme Court explicitly rejected the argument that a fourth party could be assigned some, but not all, of the

beneficiary's rights and obligations. *Bain*, 175 Wn.2d at 96, 97 and 110. The Court explained that "obligation and mortgage cannot be split, meaning that the person who can foreclose the mortgage must be the one to whom the obligation is due." *Id.* at 97. Analogously, it was not possible for Freddie Mac to split the Lender's right to foreclose from the Lender's contractual obligations.

Johnson's complaint alleges that Freddie Mac was assigned the lender's rights and obligations when it purchased the mortgage and became the lender/beneficiary/mortgagee. This is consistent with general contract law and Washington law concerning deeds of trust..

**B. There is Nothing "Contradictory" About Johnson's Contention that Freddie Mac Became the Lender after It Was Assigned the Mortgage**

Freddie Mac's Answering Brief states that: "[Johnson] contends that Freddie Mac was assigned the Lender's rights and obligations in the Deed of Trust contract. Yet, contradictorily, Johnson also claims that Freddie Mac was the actual lender, not just by virtue of assignment." (Answering Brief at 9.) (Internal quotations and citations omitted.) Johnson's position is not contradictory. Johnson does not assert that Freddie Mac was the original lender. As previously discussed, Johnson contends that Freddie Mac stood in the shoes of the original lender, Taylor Bean, after Freddie Mac was

assigned the mortgage.

### C. Freddie Mac Misstates the Law Concerning Assignment of Contractual Rights

Freddie Mac cites several cases that it incorrectly asserts allow a party to purchase some, but not all, of the assignor's rights and obligations in a contract. But those cases actually confirm the general rule that the assignee stands in the shoes of the assignor. Some of the cases state that an assignee is not necessarily liable for the prior breaches of the assignor. But that rule is irrelevant here because the subject breach of the Deed of Trust contract did not occur until *after* Freddie Mac was assigned the mortgage and became the lender/beneficiary/mortgagee. Freddie Mac appears to be confusing the assignment of *obligations* under a contract with the assignment of *liability* for breaches that occurred before the contract was assigned.

To support its argument, Freddie Mac cites *U.S. v.Thompson and Georgeson, Inc.*, 346 F.2d 865, 869 (9th Cir. 1965). Contrary to Freddie Mac's assertion, that case confirmed the general rule that "the assignee . . . stands in [the assignor's] shoes." *Id.* at 369.

Freddie Mac also cites *Am. Flint Glass Workers Union v. Anchor Resolution Corp.*, 197 F.3d 76, 81 (3d Cir. 1999). That case also confirmed the general rule that "an assignment of a contract as such involves a commitment by the assignee to perform all obligations under the contract, as

well as to acquire all rights created by the contract." *Id.* at 81. Freddie Mac appears to be confused by the unusual circumstances in that case. The court found that no "true assignment" had occurred and the parties had violated the bankruptcy code by attempting to assign the rights of a collective bargaining agreement without assigning a retroactive wage claim that had been negotiated by the union. *Id.* at 81-82.

Freddie Mac also cites *Lachmar v. Trunkline LNG Co.*, 753 F.2d 8, 9-10 (2nd Cir. 1985). As discussed in Johnson's Opening Brief, *Lachmar* is a controversial decision that was initially relied upon by the district court. (ER 26 at page 10, citing *Lachmar*.) Subsequent decisions by New York appellate courts have found that, like in Washington, "[i]t is well established that an assignee stands in the shoes of the assignor and takes the assignment subject to any pre-existing liabilities." *Richard T. Blake & Associates, Inc. v. Aetna Cas. & Sur. Co.*, 255 A.D.2d 569, 570-71, 681 N.Y.S.2d 73, 75 (1998) (distinguishing the *Lachmar* decision) (internal quotations omitted). It is unnecessary for this Court to resolve this controversy of New York law because the Deed of Trust contract is controlled by Washington law. That contract was executed in Washington and concerns real property in Washington.

Freddie Mac also cites *Schneider v. Dumbarton Developers, Inc.*, 767

F.2d1007, 1018 (D.C. Cir.1985), *quoting Rittenberg v. Donohoe Construction Co.*, 426 A.2d 338, 341 (D.C. 1981), for the following statement: "He is only liable for past breaches if he has expressly assumed any duties correlative with the right assigned, there being no implication of assumption by the mere assignment." *Id.* (Internal quotations omitted.) But Johnson does not seek a remedy for any breaches prior to the assignment of the Deed of Trust to Freddie Mac. The subject breach occurred after the assignment.

Freddie Mac also cites *Lewis v. Boehm*, 89 Wn.App. 103, 107, 947 P.2d 1265 (1997). That case confirmed that "[g]enerally an assignee stands in the shoes of the assignor." *Id.* The *Lewis* decision concerned the question of whether a third-party beneficiary of an executory contract may sue the assignee of that contract when the assignee did not expressly assume any obligations to the third-party beneficiary. The *Lewis* decision held that there was an exception to the general rule concerning assignment under such circumstances. *Lewis* is distinguishable because Johnson was not a third-party beneficiary and the deed of trust was not an executory agreement. Further, even if *Lewis* was not distinguishable, it was an appellate court decision which conflicts with the general rule established by the Washington Supreme Court in *Paullus*, 59 Wn.2d at 212. The *Paullus* decision also

involved an executory contract. *Id.* at 209. But the Washington Supreme Court found that the assignee of the executory contract must stand in the shoes of the assignor. *Id.* at 212. The Washington Supreme Court decision relied upon as authority in *Lewis* was *Hardinger v. Fullerton,* 165 Wash. 483, 490, 5 P.2d 987 (1931). *Paullus* was decided in 1961, which was 30 years after *Hardingner*. Therefore, *Paullus* overruled any conflict with the *Hardinger* decision.

The law in Washington is controlled by *Paullus*. None of the cases cited by Freddie Mac allow it to avoid the obligations of the lender after it has been assigned the lender's rights.

**D. Freddie Mac's Brief Contradicts the Facts Contained in the Complaint**

Freddie Mac's Answering Brief's contains some factual statements that contradict the allegations contained in Johnson's Second Amended Complaint. Under the standard of review, this Court must treat all of Johnson's allegations as truthful. A court of appeals reviews *de novo* a motion to dismiss under Fed. R. Civ. P. 12(b)(6) and applies the same test as the trial court. *Wyler Summit P'ship v. Turner Broad. Sys.*, 135 F.3d 658, 661 (9th Cir. 1998). Rule 12(b)(6) is meant to ensure that the defendant has "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (applying both

Fed.R.Civ.P. 8(a)(2) and 12(b)(6), quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Bell Atlantic*, 550 U.S. at 555. The trial court must review the complaint with the "assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* Under this well-established standard, Johnson's allegations must be assumed to be true and any contradictory factual assertions made by Freddie Mac must be disregarded.

Freddie Mac argues that it did not expressly accept the rights and obligations of the lender. This contradicts Johnson's complaint. (ER 27 at ¶ 5.6.) This Court should not accept Freddie Mac's assertion and should assume that Freddie Mac did expressly accept the rights and obligations of the lender when it purchased the mortgage.

Freddie Mac's Answering Brief also asserts that "[s]ubsequent to the property damage, TBW transferred the loan servicing rights to Cenlar . . . ." (Answering Brief at 2.) This is false. Johnson's complaint made no such allegation. Taylor Bean did not transfer any rights to Cenlar, nor did it have the ability to do so. In August of 2009, Taylor Bean's offices were raided by the Federal Bureau of Investigation and it immediately ceased all

operations.[2] After Taylor Bean ceased operations, there was no entity actively servicing Johnson's loan. Recognizing this problem, Freddie Mac then retained Cenlar to act as the loan servicer. (ER 27 page 4, ¶ 5.32.) Freddie Mac had the power to choose whatever loan servicer it wanted because, under *Paullus*, all rights and obligations under the Deed of Trust mortgage contract belonged to Freddie Mac after it purchased the Deed of Trust mortgage from Taylor Bean in 2008. (*See* Second Amended Complaint, ER 27 pages 2-3, ¶ 5.5-5.10.). This clarification is important because it confirms that Freddie Mac possessed all the rights and obligations of the Lender in the Deed of Trust contract, and there was no need for Taylor Bean to transfer any rights to Cenlar. As loan servicers, Taylor Bean and Cenlar were merely agents of Freddie Mac. They did not have any rights or obligations under the Deed of Trust contract.

Freddie Mac also cites the "Freddie Mac Single Family/Single-Family Seller/Servicer Guide" and "certain other purchase documents." (Answering Brief at 18.) Johnson objects to the citation of documents that are not in the record. Johnson does not have access to such documents.[3] Johnson also

---

[2] "Taylor, Bean & Whitaker shuts its doors", Ocala Star Banner, August 5, 2009, http://www.ocala.com/article/20090805/ARTICLES/908059981#gsc.tab=0

[3] The internet link that Freddie Mac has referenced does not work for Johnson's counsel. That link is http://www.allregs.com/tpl/Main.aspx but

objects to the extent that Freddie Mac claims that the Guide or other documents conflict with Johnson's complaint, because Johnson's allegations must be assumed to be true. However, this issue does not appear to be significant because Freddie Mac has made no specific representations concerning the precise language of those materials.

**E. The Merrill Doctrine Does Not Protect Freddie Mac from a Failure to Perform Its Own Obligations**

Freddie Mac argues that under *Merrill* Freddie Mac cannot be liable for the failure to use the escrow funds to pay Safeco. Johnson's Opening Brief explained why *Merrill* is inapplicable. This Court has previously held that Merrill is inapplicable when a government entity willingly enters into an agreement. *Pacord, Inc. v. U.S.*, 139 F.3d 1320, 1323 (9th Cir. 1998).

Freddie Mac argues that *Pacord* does not apply here because "Johnson alleged no facts supporting the inference that Freddie Mac authorized or ratified TBW's failure to make an insurance payment." (Answering Brief at 18.) Freddie Mac further argues that Johnson agrees its "servicing contract with TBW authorized TBW to take responsibility for the collection and payment of the funds in the escrow account." (Answering Brief at 18.) While these statements are factually correct, they do not allow

---

Johnson's counsel is redirected to http://www.allregs.com/tpl/timeout.aspx which contains no information.

Freddie Mac to escape the rights and obligations contained in the Deed of Trust after they were assigned to Freddie Mac.

As discussed above, under Washington law, Freddie Mac stood in the shoes of the assignor, Taylor Bean. This means the assignment included the Lender's duty to timely use the escrow funds to pay the insurance premium. It does not matter that Freddie Mac subsequently delegated responsibility for that task to Taylor Bean. While Freddie Mac may have a claim against Taylor Bean for its failure to perform the assigned task, the delegation of that task has no bearing on Freddie Mac's contractual relationship with Johnson. Where, as here, one of Freddie Mac's contractual duties was not performed, Johnson may sue Freddie Mac for that breach.

After the assignment of the Deed of Trust mortgage contract, Freddie Mac stood in the shoes of the Lender. Freddie Mac is liable for the breach of the Lender's duty to timely pay the insurance premium. *Merrill* does not apply because, as in *Pacord*, the government entity accepted the obligation prior to the breach.

**F. Freddie Mac had a Fiduciary Duty to Johnson**

Freddie Mac concedes that a fiduciary duty exists for the holder of an escrow account. Freddie Mac also concedes that the Lender was required to hold the insurance premium in escrow under the terms of the Deed of Trust.

Freddie Mac's argument is based on its contention that it was not the Lender. But as discussed above, Freddie Mac stood in the shoes of the original Lender, Taylor Bean, after it was assigned the mortgage rights. That Freddie Mac delegated responsibility to Taylor Bean, to Cenlar, to an employee, or to any other agent, is irrelevant to the analysis of whether Freddie Mac had a fiduciary duty in the first place.

Freddie Mac had a fiduciary duty to Johnson because Freddie Mac stood in the shoes of the Lender and, under the terms of the contract, the Lender collected the escrow funds from Johnson and was required to use the escrow funds for the timely payment of the premium.

DATED this 3rd day of February, 2014.

Respectfully submitted,

s/ Joel Hanson

Joel Hanson, WSBA #40814
Joel B. Hanson, Attorney at Law, PLLC
2825 Eastlake Avenue E., Suite 115
Seattle, WA 98102
(206) 412-8765
Attorney for Appellant Johnson

## CERTIFICATE OF COMPLIANCE

1. I certify that this brief complies with the type volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 3,292 words as counted by Microsoft Word 2010.

2. This brief complies with the type face and type size requirement of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 36(a)(6) because it has been prepared in a proportionally spaced serif typeface using Microsoft Word 2010 in 14-point Times New Roman.

DATED this 3rd day of February, 2014.

Respectfully submitted,

s/ Joel Hanson
Joel Hanson, WSBA #40814
Joel B. Hanson, Attorney at Law, PLLC
2825 Eastlake Avenue E., Suite 115
Seattle, WA 98102
(206) 412-8765

Attorney for Appellant Johnson

9th Circuit Case Number(s) 13-35596

**NOTE:** To secure your input, you should print the filled-in form to PDF (File > Print > *PDF Printer/Creator*).

*********************************************************************************

## CERTIFICATE OF SERVICE
### When All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) February 3, 2014 .

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Signature (use "s/" format) s/Sonia Chakalo

*********************************************************************************

## CERTIFICATE OF SERVICE
### When Not All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) .

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants:

Signature (use "s/" format)